# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-0117

TAMERAH BOYKIN, ET AL.

VERSUS

PPG INDUSTRIES, INC., ET AL.

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 2003-2620
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and J. David Painter, Judges.

**REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.**

J. Rock Palermo, III
Gregory P. Marceaux
Bice, Palermo & Veron
Post Office Box 2125
Lake Charles, LA 70602-2125
(337) 310-1600
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Tamerah Boykin
    Sherry Dell Trahan

**Paul L. Veazey, Jr.**
**Stockwell, Sievert, Viccellio,**
**Clements & Shaddock, L.L.P.**
**Post Office Drawer 2900**
**Lake Charles, LA 70602**
**(337) 436-9491**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **PPG Industries, Inc.**

**Terry Thibodeaux**
**Frohn & Thibodeaux, L.L.C.**
**Post Office Box 2090**
**Lake Charles, LA 70602-2090**
**(337) 433-5523**
**COUNSEL FOR THIRD PARTY DEFENDANTS/APPELLANTS:**
    **Day & Zimmerman, L.L.C., American Home Assurance**
    **Company, and National Union Fire Insurance Company**
    **of Pittsburgh, PA**

PETERS, J.

This litigation has as its origin a May 15, 2002 accident, in which Tamerah Boykin sustained personal injuries from exposure to chlorine gas at the Lake Charles, Louisiana facility of PPG Industries, Inc. (PPG). The appeal now before us arises from a judgment rendered in the suit filed by Ms. Boykin to recover the damages she sustained in the accident. In that judgment, the trial court granted PPG indemnification from Ms. Boykin's employer, Day & Zimmerman, L.L.C. (D&Z), and D&Z's insurers for all amounts PPG had paid Ms. Boykin as damages and awarded PPG attorney fees and expenses associated with its defense of Ms. Boykin's suit as well as the enforcement of D&Z's indemnity obligations. However, the trial court rejected PPG's request for statutory penalties against D&Z's insurers, American Home Assurance Company (American Home) and National Union Fire Insurance Company of Pittsburgh, Pa. (National Fire). D&Z and its two insurers have appealed the judgment, as has PPG. For the following reasons, we reverse the trial court judgment in part, affirm it in part, and render summary judgment dismissing D&Z, American Home, and National Fire from the litigation.

## DISCUSSION OF THE RECORD

On November 30, 2000, PPG and D&Z entered into a contract wherein D&Z agreed to provide security services in the form of trained security guards for PPG at its Lake Charles, Louisiana chemical plant. The security service agreement further required that D&Z list PPG as an "additional insured" on its liability insurance policies and provided for indemnification to PPG for certain losses it might sustain during the term of the contract. After execution of the security service agreement, D&Z listed PPG as an additional insured on its policies with American Home and National Fire. In December of 2000 and January of 2001, PPG generated, and D&Z's

regional account executive signed, two purchase orders for the security guard services, using PPG's standard form for Louisiana, which contained a provision requiring that PPG be indemnified for its own negligence.

Ms. Boykin was one of the security guards provided to PPG by D&Z. After the May 15, 2002 accident, she and her mother, Sherry Dell Trahan, brought suit to recover monetary damages for the injuries Ms. Boykin sustained.[1] PPG, whom Ms. Boykin named as one of the defendants in the suit, responded in part to the suit by filing a third-party demand against D&Z, American Home, and National Fire. In the third-party demand, PPG sought indemnification from the third-party defendants for any payments it might be required to make to Ms. Boykin and for all expenses it might incur in defending her claim and enforcing the indemnification agreement. The third-party defendants responded to PPG's claim by asserting that they owed no indemnification or legal defense to PPG. Before trial, Ms. Boykin reached a settlement agreement with PPG in which PPG paid her $800,000.00 and agreed to pay her an additional sum equal to one-half of any amount it recovered from the third-party defendants.

After consummation of the settlement, both PPG and the third-party defendants filed motions for summary judgment addressing the indemnification and defense issues. Hearings on these motions resulted in an August 21, 2007 judgment in which the trial court granted partial summary judgment in favor of the third-party defendants, finding that the purchase orders did not amend the security service agreement to require that PPG be indemnified for its own negligence, but rejected their motion for summary judgment seeking dismissal of PPG's claim against them

---

[1] Ms. Trahan's claim for consortium is entirely dependant on Ms. Boykin's claims. For convenience, when discussing the plaintiffs' claims, we will refer only to Ms. Boykin.

under the November 30, 2000 security service agreement. In the same judgment, the trial court granted PPG's motion for summary judgment, finding that the security service agreement provided for PPG's indemnification from D&Z and American Home for the $800,000.00 paid Ms. Boykin in settlement. The judgment further awarded PPG $467,361.51 as attorney fees and costs incurred in the defense of Ms. Boykin's claim, and an additional $218,081.26 as attorney fees and costs incurred in the enforcement of the indemnity agreement. Finally, the judgment rejected PPG's request for statutory penalties provided for in La.R.S. 22:658 and La.R.S. 22:1220.

D&Z, American Home, and National Fire[2] appealed, asserting that the trial court erred in granting PPG's motion for summary judgment and in rejecting their motion for summary judgment. Specifically, they argue that the security service agreement between D&Z and PPG did not obligate D&Z and its insurers to indemnify or defend PPG for its own legal fault in causing Ms. Boykin's injuries, and that any payment by PPG for the fault of D&Z constituted a voluntary payment for which PPG could not recover under the contract. Furthermore, the third-party defendants argue, the security service agreement did not provide for PPG's recovery of attorney fees and expenses in enforcing the indemnity agreement, and the trial court erred in allowing PPG to recover such expenses.

PPG asserts in its appeal that the trial court erred in not finding that American Home was arbitrary and capricious in failing to defend it from Ms. Boykin's suit. Thus, PPG asserts that it should have been awarded penalties as provided for in La.R.S. 22:658 and La.R.S. 22:1220. PPG also argues on appeal that the trial court erred in failing to find that the subsequent purchase order agreement entered into by

---

[2]Although it was not cast in judgment, National Fire joined the other two third-party defendants in the appeal.

3

it and D&Z provided it the right to indemnity over and above the language of the November 30, 2000 security service agreement.

## OPINION

In *Babin v. Winn-Dixie Louisiana, Inc.*, 00-78, pp. 3-4 (La. 6/30/00), 764 So.2d 37, 39-40, the Louisiana Supreme Court addressed the conditions under which a summary judgment should be granted:

> A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action ... The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2).

Appellate courts review a trial court's grant or denial of a motion for summary judgment using the *de novo* standard of review, under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate in any given case. *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La. 2/29/00), 755 So.2d 226.

***Did the security service agreement obligate D&Z and its insurers to indemnify PPG for the $800,000.00 settlement PPG paid to Ms. Boykin?***

Questions of contractual interpretation are questions of law which are subject to a *de novo* standard of review. *Mitchell v. Patterson Ins. Co.*, 00-612 (La.App. 3 Cir. 12/6/00), 774 So.2d 366. Contracts have the force of law between the parties, and the courts are bound to interpret them according to the common intent of the parties. La.Civ.Code arts. 1983 and 2045. If the words of the contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the true intent of the parties. La.Civ.Code art.

4

2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050. Whether or not a contract is ambiguous is a question of law. *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,* 93-911 (La. 1/14/94), 630 So.2d 759. These general rules that govern the interpretation of most contracts apply to contracts of indemnity. *Soverign Ins. Co., v. Tex. Pipe Line Co.*, 488 So.2d 982 (La.1986).

With regard to D&Z's indemnification obligations toward PPG, the security service agreement provides:

> Contractor shall indemnify, defend, save and hold harmless PPG, its respective agents, officers, directors, and employees from and against any and all claims, damages losses, actions, demands, deficiencies, liabilities, cost and expenses (including attorney's fees and expenses) *asserted against or incurred by PPG*, its officers, partners, employees or agents, *to the extent caused by*: (a) *a breach of any covenant, agreement, representation or warranty of the Contractor contained herein;* (b) any negligence, gross negligence or willful misconduct of the Contractor, or Contractor's personnel, or any persons who are in the Contracted Facilities at the invitation of the Contractor or its personnel. The indemnification obligation described in this Section shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor under any Workers Compensation Acts, Disability Acts or other Employee Benefit Acts, or the insurance proceeds thereof, nor shall the indemnification obligation described in this Section be limited in any way due to any limitation in the insurance coverage carried by Contractor. The obligations of Contractor hereunder shall survive the termination or expiration of this Agreement.

Section 3.1(a) of the security service agreement (emphasis added).

As previously stated, D&Z contracted to provide PPG with security services, including properly trained security guards. In granting PPG's motion for summary judgment, the trial court stated that the depositions in evidence established that D&Z's training of Ms. Boykin "fell below the standards that were warranted by D&Z

5

officials" and that D&Z breached the contract by failing to provide properly trained security guards.[3] The third-party defendants do not challenge this factual finding on appeal. Instead, they assert that the security service agreement does not require D&Z or its insurers to indemnify PPG for its own negligence. We agree.

In the absence of an express and unequivocal statement that a party is to be indemnified for that party's own negligence, the contract of indemnification will not be construed to create such an obligation. *Perkins v. Rubicon, Inc.*, 563 So.2d 258 (La.1990). Section 3.1(a) of the security service agreement contains no such statement. Thus, under the express and unequivocal language of that agreement, D&Z's indemnification obligation extended only to those situations where PPG's liability to a third party was caused by D&Z's contractual breaches.

Under Louisiana's system of comparative fault tort law, PPG's liability to Ms. Boykin is limited to her damages caused by its own negligence, and that of no one else. La.Civ.Code art. 2323. Therefore, when PPG settled with Ms. Boykin, it compensated her only for her damages resulting from its negligence.[4] While D&Z's contractual breach in failing to properly train Ms. Boykin may have contributed to her damages, La.Civ.Code art. 2323 requires a separate assessment of its percentage of fault[5] in causing Ms. Boykin's injuries—an amount for which PPG has no liability. That being the case, D&Z's breach of contract did not cause PPG's loss. *See Duzon*

[3]In her brief on appeal Ms. Boykin alleges that she had not been trained by D&Z on the proper emergency procedure for reacting to a chemical leak nor the proper route of travel within the PPG refinery.

[4]The third-party defendants argue that any payment made by PPG on their behalf was an unauthorized gratuitous payment. However, nowhere does PPG assert that it paid Ms. Boykin for any damages sustained due to the negligence of any other party.

[5]Louisiana Civil Code Article 2323 requires this separate assessment even though D&Z may be immune from tort liability to Ms. Boykin because of the exclusive remedy provisions of the Louisiana Workers' Compensation Law.

*v. Stallworth*, 01-1187, (La.App. 1 Cir. 12/11/02), 866 So.2d 837, *writs denied*, 03-589 (La. 5/2/03), 842 So.2d 1101 and 03-605 (La. 5/2/03), 842 So.2d 1110.

We find that D&Z and its insurers had no obligation under the security service agreement to indemnify PPG for Ms. Boykin's claims against it.

### *Do the purchase orders' indemnity and defense clause require D&Z to indemnify PPG for PPG's own negligence?*

PPG also argues that regardless of whether the original security service agreement provides it indemnification for its own negligence, subsequent purchase order forms accepted by D&Z do. The two purchase order forms at issue are dated December 14, 2000, and January 12, 2001, and were forwarded to D&Z by Jerry Boyles, the PPG representative who executed the November 30, 2000 contract on its behalf. Both were presented to D&Z on a standard company-generated form, and both were accepted by Tommy C. Saia, D&Z's regional account executive.[6] Mr. Saia signed the purchase order forms and returned them to PPG.

Both purchase orders consist of one two-sided page. The front of each page is divided into columns suggesting that its primary use is for ordering goods and equipment[7] and not for supplementing an existing contract. A notation contained in a box in the upper right-hand corner on the front of both purchase orders states: "THIS ORDER IS SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE." The reverse side bears the caption "PURCHASE ORDER GENERAL CONDITIONS - LOUISIANA," and contains seventeen numbered paragraphs under the caption. In support of its position, PPG relies on the notation

---

[6]James Sweney, not Mr. Saia, had executed the security service agreement on behalf of D&Z.

[7]The columns are designated as "ITEM," "QUANTITY," "UNIT," "PPG ID NUMBER," "REQUIRED DELIVERY/QUOTED DELIVERY DESCRIPTION," "UNIT PRICE," and "UNIT."

on the front of the page referencing the terms found on the back of the page—specifically, the eleventh paragraph, which provides:

> **INDEMNIFICATION**.  Seller agrees to indemnify, defend and hold harmless Buyer, it's [sic] officers, employees and representatives, from and against any and all damages, claims, demands, expenses (including reasonable attorneys' fees), losses or liabilities of any nature whatsoever, and whether involving injury or damage to any person (including employees of Seller) or property, and any and all suits, causes of action and proceedings thereon arising or allegedly arising from or related to the subject matter of this Purchase Order, *including those losses caused by the negligence of Buyer,* but except where such injury or damage was caused by the sole negligence of Buyer.  This indemnity shall survive the termination or cancellation of this Purchase Order, or any part hereof.

(Emphasis added.)

Thus, standing alone, the indemnity language of the standardized purchase order forms would seem to conflict with the language of the security service agreement relative to D&Z's obligation to indemnify PPG for its own negligence.

The trial court rejected PPG's argument that the purchase orders amended the security service agreement to require indemnification for its own negligence.  We agree with the trial court's ruling on this issue.  In making its argument, PPG ignores all of the information provided on the purchase orders other than the paragraph cited above.  The columns found on the front of the purchase order forms contain no information which might correspond to their individual headings.  In fact, the information provided is simply typed over the dividing lines between the columns.  The front of the December 14, 2000 purchase order provides, among other information, the following:

> PROVIDE SECURITY SERVICES FOR THE LAKE CHARLES FACILITY.

> CONTACT [sic] PERIOD: 12/01/00 THROUGH 11/30/03.

8

PPG CONTACT: CLYDE DENNIS

REFERENCE SECURITY SERVICES AGREEMENT DATED 11/15/00.

The January 12, 2001 purchase order included the following information:

THIS CHANGE ADVICE #1 ISSUED TO REFERENCE HOLIDAY PAY PER PROPOSAL DATED 1-10-01.

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

The remaining paragraphs on the back of the purchase orders also support the conclusion that the purchase order form was not intended to modify the original security service agreement. Some cover such subjects as prices and payments, packing and shipping, delivery schedules, warranties, inspection, use of information associated with the property supplied, and ownership of the property subject to the purchase order—subjects clearly not applicable to the security service agreement. While some of the remaining paragraphs might, standing alone, appear to apply to the original security service agreement, it is clear from reading the purchase order form in its entirety that the terms and conditions found on the reverse side of the purchase orders are nothing more than boilerplate language unrelated to the subject of the security service agreement. Furthermore, although in writing, the purchase orders were not negotiated between the parties and did not state that they amended the previously-negotiated security service agreement.

This court has previously held that where there are multiple agreements between the same parties for the same goods or services, and those agreements contain conflicting expressions over the intention to indemnify the indemnitee for his own negligence, then the uncertainty in the two different indemnity clauses must be resolved against the indemnitee. *Perkins v. J. W. Contractors, Inc.*, 586 So.2d 719

9

(La.App. 3 Cir. 1991), *writ denied*, 590 So.2d 591 (La.1992). We find no error in the trial court's conclusion that the purchase orders did not alter the indemnification obligations set forth in the November 30, 2000 contract. Because here there are two different indemnification clauses in the multiple related contracts between the parties, only one of which provides that PPG will be indemnified for its own negligence, we find that the intention to indemnify PPG for its own negligence is equivocal, and we must apply the presumption that the parties did not intend to indemnify an indemnitee against losses resulting from its own negligent act. *Soverign Ins. Co.*, 488 So.2d 982.

***Did the trial court err in awarding PPG the costs it incurred in defending its suit with Ms. Boykin and in enforcing the indemnity agreement?***

Because we find that D&Z and its insurers had no obligation to indemnify PPG under either the November 30, 2000 security service agreement or under the subsequent purchase orders, it follows that they did not owe PPG reimbursement for any costs incurred in defending Ms. Boykin's suit or in enforcing the indemnity agreement.

***Is PPG entitled to statutory penalties pursuant to La.R.S. 22:658, La.R.S. 22:1220(B)(1), or La.R.S. 22:1220(B)(5) and to an award of attorney fees on appeal?***

Because we find merit in the position of the third-party defendants on appeal, we reject PPG's argument that it is entitled to an award of penalties against American Home for a breach of their duties of good faith and fair dealing pursuant to La.R.S. 22:658 and La.R.S. 22:1220. We also reject PPG's claim for an award of attorney fees on appeal.

***Did the trial court err in denying the third-party defendants' motion for summary judgment?***

In their appeal, D&Z, American Home, and National Fire also assert that we should reverse the trial court's denial of their motion for summary judgment and dismiss them from the litigation. This court is authorized, and indeed required, to render a "judgment which is just, legal, and proper upon the record on appeal." La.Code Civ.P. art 2164. Thus, we may grant a party's motion for summary judgment when the record before us warrants doing so. *Rashall v. Pennington*, 08-1 (La.App. 3 Cir. 4/30/08), _ So.2d _.

Here, PPG's only claims against the third-party defendants are based on the indemnity clauses in the security service agreement and the purchase orders. Because we have found that neither of these contracts require that the third-party defendants indemnify or defend PPG from Ms. Boykin's claims against it, PPG has no claims against them, and the trial court erred in not granting them summary judgment relief. Applying La.Code Civ.P. art 2164, we grant the third-party defendants' motion for summary judgment and dismiss PPG's claims against them.

**DISPOSITION**

For the reasons stated above, we reverse the trial court judgment awarding PPG Industries, Inc., judgment against Day & Zimmerman, L.L.C. and American Home Assurance Company in the amounts of $800,000.00 as indemnification for its payment to Tamerah Boykin in settlement of her claim; $467,361.51 as expenses it incurred in defending Ms. Boykin's claim; and $218,081.26 as expenses it incurred in enforcing the indemnity agreement. We affirm the trial court's rejection of PPG Industries, Inc.'s claim for statutory penalties. Finally, we reverse the trial court's rejection of the motion for summary judgment filed by Day & Zimmerman, L.L.C., American Home Assurance Company, and National Union Fire Insurance Company

11

of Pittsburgh, Pa., grant their motion for summary judgment, and dismiss them as third-party defendants in the litigation.

**REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.**